UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TEXAS INSURANCE COMPANY,<br><br>            Plaintiff(s),<br><br>     v.<br><br>ARES INSURANCE MANAGERS LLC,<br><br>            Defendant(s). | CASE NO. C23-01473-KKE<br><br>ORDER GRANTING MOTION TO<br>INTERVENE AND STAYING CASE |

THIS MATTER comes before the Court on Talisman Specialty Underwriters, Inc.'s motion to intervene. Dkt. No. 24. For the reasons set forth below, Talisman's motion is granted. Further, the case is stayed pending resolution of the related case in the Eastern District of Louisiana, *Texas Insurance Company v. Talisman Specialty Underwriters, Inc.*, No. 23-CV-03412-SSV-JVM ("the Louisiana case").

## I.     BACKGROUND

Plaintiff Texas Insurance Company ("TIC") is a surplus line property and casualty insurance carrier. Compl. (Dkt. No. 1) ¶ 6. Defendant Ares Insurance Managers LLC ("Ares") is an independent managing general underwriter and excess surplus line broker specializing in marine insurance. Compl. ¶ 8. TIC filed a complaint against Ares in this Court, alleging Ares has been soliciting and entering insurance policies in TIC's name without authorization. Compl. ¶ 1.

TIC and Catlin Insurance Company ("Catlin") are sister companies owned by the North American Casualty Company ("NAC"). Dkt. No. 30-2, at 12. On January 3, 2023, Talisman Specialty Underwriters, Inc. ("Talisman") and Catlin entered into a Managing General Agent Agreement ("MGA Agreement"). *Id.* at 1. Under the MGA Agreement, Catlin appointed Talisman to market and underwrite certain coverages on Catlin's behalf. *Id.* The MGA Agreement provided that if Catlin's A.M. Best financial strength rating[1] fell below "A-," NAC would permit Talisman to "market and underwrite Property and Casualty, Accident and Health, and Financial Lines Coverages on behalf of Texas Insurance Company on the same terms and conditions." *Id.* at 12, ¶ 29.

On December 29, 2022, Talisman entered a Delegated Underwriting Agreement ("DUA") with Ares. Dkt. No. 29-1. The DUA permits Ares to act on Talisman's behalf in marketing and entering insurance policies. *Id.*

On January 10, 2023, A.M. Best withdrew Catlin's insurance rating. Dkt. No. 30, ¶ 12. On January 16, 2023, Talisman informed Ares that the underwriter in their DUA was updated from Catlin to TIC, and the two executed an amended DUA on January 18, 2023. Dkt. No. 29-3, 4. On April 1, 2023, Talisman and TIC executed an MGA Agreement replacing the prior Talisman-Catlin MGA Agreement. Dkt. No. 30-3.

On August 14, 2023, TIC filed the Louisiana case against Talisman, alleging Talisman exceeded its authority under the MGA Agreement by causing Talisman sub-agents, including Ares, to issue policies without proper authorization. *See* 2:23-cv-03412-SSV-JVM (E.D. La. 2023), Dkt. No. 1.[2] The Complaint alleged the following causes of action: breach of contract (*id.*

---

[1] A.M. Best is "a global credit agency, news publisher, and data analytics provider specializing in the insurance industry." AM BEST, https://web.ambest.com/home (last visited Nov. 25, 2023).

[2] TIC filed an amended complaint on November 22, 2023. 2:23-cv-03412-SSV-JVM (E.D. La. 2023), Dkt. No. 63. TIC added causes of action for fraud by omission (*Id.* at 27) and intentional breach of contract (*Id.* at 32). The filing of this amended complaint does not alter the Court's analysis.

at 14), breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, conversion, misappropriation of name, deceptive practices and unfair competition, fraud, and unjust enrichment. *Id.* at 16-21. The deceptive practices, unfair competition, and fraud claims were brought under Louisiana statute. *Id.* (E.D. La. 2023), Dkt. No. 2, Ex. 3 at 13 (citing LA. STAT. ANN. § 51:1405; L.A. CIV. CODE art. 1953). TIC sought a temporary restraining order and preliminary injunction to prevent Talisman and its sub-agents from issuing additional policies on TIC paper. 2:23-cv-03412-SSV-JVM (E.D. La. 2023), Dkt. No. 2.

On September 20, 2023, TIC filed the complaint against Ares in this Court. Dkt. No. 1. The complaint alleged: violation of the Washington Consumer Protection Act ("CPA") (WASH. REV. CODE § 19.86.020), common law unfair competition, unjust enrichment, and, in the alternative, breach of fiduciary duty. *Id.* at 8-10. TIC also sought a temporary restraining order and preliminary injunction in this Court to prevent Ares from issuing any additional policies on TIC paper. Dkt. No. 3. On September 26, 2023, this Court denied the motion for a temporary restraining order. Dkt. No. 18. Following a status conference on October 4, 2023 (Dkt. No. 22), the Court set a hearing on TIC's motion for a preliminary injunction for November 6, 2023. Dkt. No. 23.

On October 5, 2023, Talisman filed the pending motion to intervene in this case. Dkt. No. 24. TIC opposed the motion. Dkt. No. 32.

On October 12, 2023, the district court in Louisiana held an evidentiary hearing on TIC's pending motion for preliminary injunctive relief in the Louisiana case. 2:23-cv-03412-SSV-JVM (E.D. La. 2023), Dkt. No. 42.

In light of the opposed motion to intervene and ongoing proceedings in the Louisiana case, this Court converted the previously set hearing on November 6, 2023 from a preliminary injunction hearing to a hearing on Talisman's motion to intervene. Dkt. No. 38. In advance of the hearing,

the Court asked the parties to be prepared to address the impact, if any, of the "first-to-file" rule, and whether, given the Louisiana case, this action should be stayed. Dkt. No. 38. Upon consideration of the parties' briefing and argument at the hearing, the Court concludes that Talisman is entitled to intervene in this action and that this case should be stayed pending adjudication of the Louisiana case.

## II. DISCUSSION

### A. Talisman May Intervene as a Matter of Right.

An applicant seeking to intervene as of right under Rule 24(a)(2)[3] has the burden to show that four requirements are met:

> (1) the intervention application is timely;
> (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action;
> (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and
> (4) the existing parties may not adequately represent the applicant's interest.

*Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (cleaned up). These requirements "are broadly interpreted in favor of intervention." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). Further, the Court is guided primarily by "practical considerations, not technical distinctions" in assessing whether an applicant has met its burden. *Sw. Ctr. for Biological Diversity*, 268 F.3d 810, 818 (9th Cir. 2001) (cleaned up).

The Court finds Talisman has met its burden to intervene as a matter of right. TIC does not challenge the timeliness of Talisman's motion, and as such, the first requirement is met. Dkt. No. 32 at 4, n.1.

While the "significant protectable interest" requirement has not been clearly defined by the Supreme Court, this requirement is "generally satisfied when the interest is protectable under some

---

[3] Federal Rule of Civil Procedure 24(a)(1) concerns unconditional statutory right of intervention. Talisman makes no claim of statutory right to intervene.

law, and [] there is a relationship between the legally protected interest and the claims at issue." *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (cleaned up).  The "relationship" here is generally satisfied "only if the resolution of the plaintiff's claims actually will affect the applicant."  *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998).  The Ninth Circuit consistently interprets this requirement as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 536 F.3d 980, 985 (2008) (quoting *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (2002) (applying *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002))); *see also*, *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (cleaned up).

Talisman argues it has a significant protectable interest in:

(1) its contractual rights and obligations as created between Talisman and Ares, (2) the contractual rights and obligations that TIC owes Talisman under its own contractual undertakings with Talisman, and (3) the contractual rights and obligations existing between Talisman and North American Casualty (TIC's parent), and Catlin Specialty Insurance Co. – TIC's sister entity which Talisman is in the process of purchasing[.]

Dkt. No. 24 at 5.

TIC argues Talisman does not have a significant protectable interest in Talisman's contractual rights and obligations pursuant to its agreements with Ares because "Talisman's contractual arrangement with Ares does not bear on the fact that TIC does not authorize Ares' issuance of policies on its behalf."  Dkt. No. 32 at 5.  However, as TIC states in its own briefing, "Ares submits that its authority to write policies in TIC's name[] is wholly derivative of Talisman's authority to do so."  Dkt. No. 32 at 4.

The Court finds Talisman has a significant protectable interest in its right to contract with Ares, and a resolution of this case in TIC's favor will hinder or eliminate this right.  As a practical

matter, Talisman's participation in this case will also aid the Court in resolving whether Ares is authorized to write policies on TIC paper.[4]  The second requirement for intervention is thus met.

As to the third requirement, impairment of interest, the intervenor's burden to show that their interests may be impaired is "minimal."  *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001) (cleaned up).  "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied."  *Id.*  The Ninth Circuit has emphasized "the relevant inquiry is whether the [pending litigation] 'may' impair rights 'as a practical matter' rather than whether [it] will 'necessarily' impair them.  *U.S. v. City of Los Angeles, Cal.*, 288 F.3d at 401 (quoting Fed. R. Civ. P. 24(a)(2)).

Talisman argues disposition of this action without its intervention could impair its interests because "[t]here is no privity of contract between Ares and TIC.  Talisman has contracts directly with TIC, and based on these contracts Talisman has delegated authority to Ares.  Talisman has a right to assert what it believes those contracts mean and how they should be interpreted by the Court."  Dkt. No. 24 at 6.  In contrast, TIC argues Talisman's rights are protected by Talisman's participation in the Louisiana case.  Dkt. No. 32 at 5.  TIC cites no legal authority to support this argument.

As a practical matter, resolution of this case in TIC's favor may impair Talisman's rights to contract with Ares or any other sub-agent under its MGA Agreement with TIC.  *See Pipkin v. Burlington N. & Sante Fe R.R. Co.*, No. C04-5591RJB, 2005 WL 8173114, at *2 (W.D. Wash. July 25, 2005) (holding a proposed intervenor demonstrated its rights under a contract with

---

[4] Because the Court finds Talisman has a significant protectable interest in its right to contract with Ares, the Court does not reach TIC's other arguments regarding Talisman's interest in the MGA Agreement between Talisman and TIC, or Talisman's interest in contractual rights and obligations relating to Catlin.  *See* Dkt. No. 24 at 5.

defendant could be impacted by the outcome of the case).   Accordingly, Talisman has met its low burden to show possible impairment of a substantial legal interest.

Finally, Talisman must show that its interests are not adequately represented. "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898.   "In assessing the adequacy of representation, the focus should be on the 'subject of the action,' not just the particular issues before the court at the time of the motion." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823 (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)).   In evaluating adequacy of representation, the court examines three factors:

(1) Whether the interest of a present party is such that it will undoubtedly make all of the proposed intervenor's arguments;
(2) Whether the present party is capable and willing to make such arguments; and
(3) Whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki*, 324 F.3d at 1086.   The "most important factor" in assessing the adequacy of representation is "how the interest compares with the interest of existing parties." *Id.*   "Where an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997) (cleaned up).   "If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Arakaki*, 324 F.3d at 1086; *Citizens for Balanced Use*, 647 F.3d at 898 ("To rebut the presumption, an applicant must make a 'compelling showing' of inadequacy of representation." (quoting *Arakaki*, 324 F.3d at 1086)); *Proie v. Nat'l Marine Fisheries Serv.*, No. C11-5955-BHS, 2012 WL 681676, at *2 (W.D. Wash. Feb. 28, 2012).[5]

---

[5] Talisman cites authority from the Eleventh Circuit to argue the presumption is weak: "in effect, it merely imposes upon the proposed interveners the burden of coming forward with some evidence to the contrary." *Clark v. Putnam*

1       In *Southwest Center for Biological Diversity*, the Ninth Circuit considered the inadequacy

2   requirement.  268 F.3d at 814.  There, developers sought to intervene as defendants in a case where

3   Southwest sued a city, challenging several municipal plans as insufficiently protective of

4   endangered species.  *Id.* at 816.  The district court ruled the developers did not meet the inadequacy

5   of representation requirement because the developers and the City shared the same "ultimate

6   objective" of defending the municipal plans.  *Id.* at 823.  The Ninth Circuit reversed, holding "even

7   if the presumption applies, it is rebutted here because [the City and the developers] do not have

8   sufficiently congruent interests."  *Id.*  The Ninth Circuit noted the parties' interests diverged in

9   both motivation for seeking the ultimate objective, and in their duties related to the municipal

10  plans.  *Id.*  In addition, the developers "would likely offer important elements to the proceedings

11  that the existing parties would likely neglect."  *Id.*  The Ninth Circuit noted "it is not [the

12  developers'] burden at this stage in the litigation to anticipate specific differences in trial strategy.

13  It is sufficient for Applicants to show that, because of the difference in interests, it is likely that

14  Defendants will not advance the same arguments as Applicants."  *Id.* at 824.

15      Here, even if the Court were to find that the presumption of adequate representation

16  applies, it is overcome.  While Ares and Talisman share the ultimate objective of Ares continuing

17  to issue insurance policies, like the parties in *Southwest Center for Biological Diversity*, the two

18  have differing motivations for seeking this objective and differing duties related to the contracts at

19  issue.  Talisman seeks to enforce its alleged rights under its MGA Agreement with TIC, while

20  Ares seeks to enforce its rights under its DUA with Talisman.  The two parties do not share

21

22

23  *Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999).  The Ninth Circuit has consistently held the presumption must be rebutted by a "compelling showing" of inadequacy.  However, the "compelling showing" standard refers to "identical" interests, rather than the same ultimate objective.  *Arakaki,* 324 F.3d at 1086.

24

"identical interests" in the outcome of this litigation.  Talisman has made a compelling showing overcoming any presumption of adequacy of representation.

Given the parties' differing interests, is not "undoubtable" that Ares will make the same arguments Talisman would, or that Ares is capable and willing to make such arguments in the absence of Talisman's intervention.  The Court also finds that, because Talisman is the party in privity with TIC, Talisman will likely offer important elements to the proceedings that Ares would neglect. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823.  Ares has demonstrated it has the ability to produce certain documents and testimony in Talisman's possession, and Talisman has retained the same counsel as Ares at the present stage of these proceedings.  However, Talisman is the party who negotiated and entered the MGA Agreement and will best be able to assist the Court in understanding the flow of authority from the MGA Agreement down through the Talisman-Ares DUA.  Accordingly, Talisman has met its burden to show representation of its interests by Ares "may be" inadequate. *Id*.

**B.    Talisman is Also Entitled to Permissive Intervention.**

In the alternative, the Court would permit Talisman to intervene.  The Court finds Talisman meets the threshold requirements for permissive intervention, and that the discretionary factors the Court may consider, on balance, weigh in Talisman's favor.

There are three threshold requirements for permissive intervention: timeliness, common question of law or fact, and independent jurisdiction.[6]  Federal Rule of Civil Procedure 24(b)(1)(B) provides, "[o]n timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact."  In addition, a court

---

[6] "[T]he requirement of a legally protectable interest applies only to intervention as of right under Rule 24(a), not permissive intervention under Rule 24(b)." *Emp. Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994).

must have an independent basis for jurisdiction over the applicant's claims.  *Donnelly*, 159 F.3d at

412.  "In exercising its discretion, the court must consider whether the intervention will unduly

delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

The Court may consider factors including: "the nature and extent of the intervenors'

interest, . . . and whether parties seeking intervention will significantly contribute to full

development of the underlying factual issues in the suit and to the just and equitable adjudication

of the legal questions presented."  *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th

Cir. 1977); *Yim v. City of Seattle*, No. CV18-0736-BJR, 2018 WL 4027084, at *2 (W.D. Wash.

Aug. 23, 2018); *Sullivan v. Ferguson*, No. 3:22-CV-05403-DGE, 2022 WL 10428165, at *4 (W.D.

Wash. Oct. 18, 2022).

The Court finds Talisman meets the three threshold requirements for permissive

intervention.  First, TIC does not challenge the timeliness of Talisman's application.  Second,

Talisman argues it has claims and defenses that share a common question of law or fact with this

lawsuit, namely its rights under its MGA Agreement with TIC.  Dkt. No. 24 at 7.  Because

determining whether Ares has authority to issue policies on TIC paper requires examining whether

Talisman appropriately represented its ability under the MGA Agreement to delegate authority,

the Court finds Talisman has demonstrated a common question of law or fact.  Third, Talisman

asserts this court has an independent basis for jurisdiction over its claims on the basis of diversity

jurisdiction.  Because TIC's pleadings assert diversity jurisdiction and Talisman's addition would

not destroy diversity, the Court finds it has independent basis for jurisdiction over Talisman's

claims.  Finally, the Court is not persuaded that Talisman's intervention would unduly delay or

prejudice the adjudication of TIC's rights in this case.

TIC challenges Talisman's permissive intervention by arguing Talisman's rights and

obligations are already being fully adjudicated in the Louisiana action, and that Talisman is

otherwise adequately represented by Ares. Dkt. No. 32 at 6–7. These are discretionary factors the Court may consider, and not requirements for permissive intervention. Another discretionary factor, "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented," weighs heavily in favor of permitting Talisman to intervene because, as discussed above, Talisman is the party in privity with TIC. *Spangler*, 552 F.2d at 1329. Accordingly, the Court concludes that Talisman has satisfied the requirements for permissive intervention.

## C. The First-to-File Rule Necessitates a Temporary Stay of this Action.

As noted above, the Court invited the parties to present argument on the impact of the "first-to-file" rule at the November 6, 2023 hearing. Dkt. No. 38. A district court may raise the issue of whether a stay is appropriate under the first-to-file rule *sua sponte*. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 258 n.1 (4th Cir. 2013); *Guill v. All. Res. Partners, L.P.*, No. 16-CV-0424-NJR-DGW, 2017 WL 1132613, at *3 (S.D. Ill. Mar. 27, 2017); *Strother v. Hylas Yachts, Inc.*, No. 12-80283-CV, 2012 WL 4531357, at *1 (S.D. Fla. Oct. 1, 2012); *QVC, Inc. v. Patiomats.com, LLC*, No. CIV.A. 12-3168, 2012 WL 3155471, at *3 (E.D. Pa. Aug. 3, 2012).

The Court finds this case meets the criteria for a stay under the first-to-file rule, and that a stay is appropriate in this case.

"The first-to-file rule allows a district court to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). "When applying the first-to-file rule, courts should be driven to maximize economy, consistency, and comity." *Id.* at 1240 (cleaned up). In determining whether to apply the rule and stay the second-filed action,

"[a] court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Id.*

### 1. *Chronology*

The parties do not dispute that the Louisiana case was filed first; the Court finds this requirement is met.

### 2. *Similarity of the Parties*

"[T]he first-to-file rule does not require exact identity of the parties. . . . Rather, the first-to-file rule requires only substantial similarity of the parties." *Kohn*, 77 F.3d at 1240 (cleaned up). "Courts have found that if the parties are not identical in the two related actions, they are 'substantially similar' under the first-to-file rule if they represent the same interests." *Aqua Connect, Inc. v. SHI Int'l Corp.*, No. CV 19-05662-AB (JPR), 2019 WL 8883452, at *3 (C.D. Cal. Dec. 16, 2019) (citing *Ruoey Lung Enter. Corp. v. Tempur–Pedic Int'l, Inc.*, No. SACV 09-0675 AG (ANx), 2009 WL 10675241, at *2 (C.D. Cal. Sept. 14, 2009)).

For example, in *Miller Mendel Inc. v. Alaska State Troopers*, No. 3:21-CV-0129-HRH, 2021 WL 3698377 (D. Alaska Aug. 19, 2021), the plaintiff filed multiple actions against different parties alleging infringement of the same patent. Although there was no overlap of defendants between the first and second-filed cases, the court applied *Kohn* and stayed the second-filed action. *Id.* at *3. The court ruled that the parties were substantially similar because "[i]t is sufficient that the plaintiffs are the same in both cases and that the defendants in both cases . . . are accused of infringing the same product." *Id.*; *see also Aqua Connect*, 2019 WL 8883452 at *3 (defendants substantially similar where both accused of infringing plaintiff's patents); *McCain v. Racing*, No. 07 Civ. 5729 (JSR), 2007 WL 2435170, at *2 (S.D.N.Y. Aug. 27, 2007) (two parties plainly represent the same interests where one is the wholly owned subsidiary of the other); *Nova Wines, Inc. v. Adler Fels Winery LLC*, No. C 06-6149 MHP, 2007 WL 708556, at *3 (N.D. Cal. Mar. 2,

1    2007) (parties substantially similar where legal theories and alleged conduct was "intertwined"

2    between the two actions).

3         Here, even if the Court had not granted Talisman's motion to intervene, the Court would

4    find Talisman and Ares are substantially similar parties for the purpose of the first-to-file inquiry.

5    Like the parties in *Miller Mendel*, where both parties were accused of infringing the same patent,

6    Ares and Talisman are both accused of exceeding their authority under the TIC-Talisman MGA

7    Agreement.  Moreover, the alleged conduct of Ares and Talisman is plainly intertwined.  And

8    TIC's underlying theory is the same in both cases: that Talisman exceeded its authority under the

9    MGA Agreement, causing Ares to act without proper authorization.  As such, an adjudication of

10   Talisman's rights under the MGA Agreement is clearly "probative" of Ares's authority to issue

11   policies here.  *See Nova Wines*, 2007 WL 708556, at *3 (issues in first case "probative" of issues

12   in second, warranting stay of second case).

13        This conclusion is not in conflict with the Court's finding *supra* that Ares and Talisman

14   have sufficiently differing interests under the "adequacy of representation" intervention

15   requirement.  The general guiding principles of these two inquiries differ.  On the one hand, the

16   requirements for intervention are "broadly interpreted in favor of intervention" (*Citizens for

17   Balanced Use*, 647 F.3d at 897) and the Court is primarily guided by "practical considerations"

18   (*Southwest Center for Biological Diversity*, 268 F.3d at 818).  On the other hand, when applying

19   the first-to-file rule, courts are "driven by economy, *consistency*, and *comity*."  *Kohn*, 787 F.3d at

20   1240 (emphasis added).  As explained above, Ares's and Talisman's interests converge in that they

21   both urge the Court to interpret the MGA Agreement as allowing Talisman to delegate authority

22   to Ares and for Ares to continue issuing policies.  This shared interest in, and potential to be bound

23   or have rights impaired by, the outcome of the litigation goes to the principles of consistency and

24   comity.  If the Court allowed this matter to proceed concurrently with the Louisiana case, there

would be the risk of inconsistent findings of fact and conflicting orders. Meanwhile, the interests of Ares and Talisman diverge in that they have different motivations and responsibilities for participating in the litigation, and each bring important context to this proceeding due to their differing relationships with TIC. These divergent interests go to whether, as a practical matter, Talisman has demonstrated a basis to participate in the pending litigation.

In sum, the parties are sufficiently similar to satisfy the second prong of the first-to-file rule.

### 3. *Similarity of the Issues*

Finally, the Court looks to whether there is "substantial overlap between the two suits." *Kohn*, 787 F.3d at 1241 (cleaned up). "The issues in both cases [] need not be identical, only substantially similar." *Id.* at 1240.

In *Kohn*, the Ninth Circuit found sufficiently similar issues when the two cases at issue both concerned whether plaintiffs were entitled to the same funds.[7] *Kohn*, 787 F.3d at 1241. There, the court found the second case involved "*the issue* to be determined in the [first-filed] action." *Id.* (emphasis in original).

The issues in this case and the Louisiana case are substantially similar. First, TIC concedes that it seeks the same relief in both cases, and that if its pending motion for preliminary injunction in the Louisiana case is granted, it could moot this case. Dkt. No. 32 at 1. In opposing Talisman's motion to intervene, TIC states "TIC has separately filed suit against Talisman in the United States

---

[7] The question Kohn Law asks the Central District of California to resolve is at the 'heart' of the Mississippi interpleader action — whether Noatex is entitled to the $260,410.15. If Noatex does not recover funds in the Mississippi interpleader action, Kohn Law will likely have no claim to those funds. And, if Noatex does recover funds in the Mississippi interpleader action, Kohn Law will likely recover funds. Not only does the present case involve substantially similar issues as the Mississippi interpleader action, the present case involves *the issue* to be determined in the Mississippi interpleader action.
*Kohn*, 787 F.3d at 1241 (emphasis in original).

District Court for the Eastern District of Louisiana, where, among other relief, TIC seeks to enjoin Talisman from continuing to write or authorizing its multiple sub-agents (including Ares) to act in TIC's name without TIC's authorization." *Id.* And, "that injunction should effectively preclude Ares' conduct and potentially resolve [this] case." *Id.* at 2. Under that reasoning, the issues in both cases are substantially similar – whether Talisman and or Ares should be enjoined from issuing policies or causing policies to be issued in TIC's name.

Second, TIC acknowledges interpretation of the MGA Agreement is central to both cases. TIC states in its reply in support of its motion for preliminary injunction "[e]ach of Ares' defenses to TIC's causes of action hinges on its . . . assertion that it is authorized to issue policies in TIC's name." Dkt. No. 33 at 9. As in *Kohn*, TIC asks the Court to reach the issue at the heart of the Louisiana case. TIC attached the MGA Agreement as the first exhibit to its complaint. Dkt. No. 1, Ex. 1. In its motion for preliminary injunction, TIC states "Ares solicited and entered into hundreds of insurance policies in TIC's name without authorization. . . . Ares did so by purporting to act on TIC's behalf under [the MGA Agreement] entered between TIC and [Talisman]." Dkt. No. 3 at 6. 1. Meanwhile TIC alleges, in its Complaint in the Louisiana case, "Talisman has . . . purport[ed] to delegate its limited authority under the [MGA Agreement] with TIC to multiple other 'sub-agents,' without obtaining TIC's prior requisite approval." 2:23-cv-03412-SSV-JVM (E.D. La. 2023) Dkt. No. 1 at 2. Interpretation of the MGA Agreement is clearly at the heart of both the Louisiana case and this case.

Finally, the variation between the causes of action in the two cases does not preclude a finding that the issues are substantially similar.[8] At the November 6, 2023 hearing, TIC argued the claims it brings against Ares under the CPA are separate from issues related to the MGA

---

[8] TIC's claims against Ares for unjust enrichment and breach of fiduciary duty do not preclude this finding because interpretation of the MGA agreement is central to resolving both of those claims.

Agreement at issue in Louisiana.  Dkt. No. 43 at 10-11, 14.  Specifically, TIC argued this Court may find it is unfair or deceptive for Ares to write policies while knowing the policies are subject to dispute, and that whether Ares's conduct is unfair or deceptive does not necessarily turn on interpretation of the MGA Agreement.  *Id.* at 10-11.  The Court is unpersuaded.  As a practical matter, the Court does not see how the CPA claim can be extricated from the issue of Ares's claimed authority under the MGA Agreement, or its own perception of that authority.

In sum, the Court finds that the issues in the Louisiana case and this action have significant overlap.  Both actions allege Talisman exceeded its authority under the TIC-Talisman MGA Agreement by causing Ares to issue certain insurance policies in TIC's name.  Accordingly, this factor also counsels in favor of a stay.

## D.    An Indefinite Stay is Appropriate at this Juncture.

At the hearing on November 6, 2023, TIC argued Ares's ongoing issuance of policies during an indefinite stay would prejudice TIC and compound its claimed harms.  Dkt. No. 43 at 30-31.  TIC further argued that indefinite stays are disfavored.  *Id.*  Indeed, as a general policy, the Ninth Circuit disfavors stays of indefinite duration pursuant to *Landis v. N. Am. Co.*, 299 U.S. 248 (1936),[9] or when a civil case is stayed pending resolution of a related criminal matter.  *See Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) (citing *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir.1995) (discussing stay of a civil case pending resolution of related criminal charges); *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007) (discussing a *Landis* stay).  However, given the considerations inherent in the decision to stay a case pursuant to the first-to-

---

[9] In considering a *Landis* stay, a district court weighs "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).

file rule, the Court is not convinced that TIC will be prejudiced if this action is stayed. To the contrary, TIC has acknowledged that the Louisiana action may resolve the majority (if not all) of its claims against Ares. Dkt. No. 32 at 2. Given the activity on the Louisiana case docket, there is no reason to assume a stay in this case would last an unreasonable amount of time. Should the length of the stay approach what might be considered an unreasonable duration, TIC can move to lift the stay at that juncture. *See Miller Mendel Inc.*, 2021 WL 3698377 at *6.

### III.    CONCLUSION

Talisman's motion to intervene is GRANTED. Dkt. No. 24. This case is STAYED pending adjudication of *Texas Insurance Company v. Talisman Specialty Underwriters, Inc.*, No. 23-CV-03412-SSV-JVM. Within ten days of the resolution of TIC's motion for preliminary injunction in the Louisiana case, the parties are ORDERED to file a joint status report containing a proposed briefing schedule for any motion to lift the stay.

Dated this 28th day of November, 2023.

Kymberly K. Evanson
United States District Judge